## Pine Grove Hose, Hook and Ladder Co. No. 1 Liquor License Case.

Argued March 20, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Horace A. Segelbaum,* Deputy Attorney General, with him *Linn H. Schantz,* Deputy Attorney General and *T. McKeen Chidsey,* Attorney General, for appellant.

*Carl A. Cassone,* with him *Charles L. Frank,* for appellee.

OPINION BY HIRT, J., July 20, 1950:

Pine Grove Hose, Hook and Ladder Co. No. 1, duly incorporated by the Court of Common Pleas of Schuylkill County, is a reputable and bona fide club within the definition of §2 of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as last reënacted and amended by the Act of May 21, 1943, P. L. 403, 47 PS §744-2.

The corporation is the holder of a club retail dispenser license, permitting it to sell malt or brewed beverages on the club premises at retail, issued under the provisions of the Beverage License Law of June 16, 1937, P. L. 1827, as amended, 47 PS §84, et seq. On May 31, 1949, this club filed an application with the Pennsylvania Liquor Control Broad for a club liquor license under the Pennsylvania Liquor Control Act, supra, as amended, 47 PS §744-401. On June 3, 1949, the club was notified by the Board that the quota of retail licenses in the Borough of Pine Grove as determined by the Act of June 24, 1939, P. L. 806, 47 PS §744-1002, had been filled. Thereafter a hearing was duly held on the application, and on September 26, 1949, the Board filed an opinion and order refusing the club liquor license applied for. The Board in its opinion found that, in the borough, there were three existing restaurant liquor licenses, one hotel liquor license, two club liquor licenses and two club retail dispenser licenses. The population of Pine Grove Borough is 2239 giving it a quota of 3 retail licenses under the 1939 Act. Hotel and club licenses are not to be included in the computation, but exclusive of them the three existing restaurant liquor licenses filled the quota. It is conceded that on that ground the Board refused the application and not in the exercise of a general discretion. On appeal the lower court held that a club license does not fall within the provisions of the Quota Act, supra, and accordingly directed the Board to issue the club liquor license to the applicant. The order will be reversed.

The single question before us is: May a club liquor license be issued in a municipality in which the quota of retail licenses, under the 1939 Act, has been filled?

Since a liquor license, issued under §401 of the 1933 Act, as amended, 47 PS §744-401, allows a club to sell malt or brewed beverages as well as liquor at retail, the present proceeding must be regarded as an application

for a *new* license. And the abandonment and surrender of the present retail dispenser license by the applicant could not in any way affect the number of permissible licenses for the retail sale of liquor and malt or brewed beverages under the quota applicable to the Borough, under the 1939 Act. The question raised in this appeal is no longer novel; it is answered, and this appeal is ruled against the appellee, by our decision in *Goodwill Fire Co. License Case,* 166 Pa. Superior Ct. 42, 70 A. 2d 706. Section 2 of the Quota Act, supra, provides in effect that no license for the sale at retail of liquor and malt or brewed beverages, or of malt or brewed beverages alone, shall be granted in excess of "one of such licenses, of any class, for each one thousand inhabitants or fraction thereof, in any municipality . . ." The Act by its terms applies to club liquor licenses as well as retail licenses of every other class except that club licenses existing on the effective date of the Act are excluded from the count of licenses chargeable against the quota of a municipality. But as we indicated in the *Goodwill* case, the exclusion does not remove clubs from the operation of the Quota Law. A club liquor license is a license for the retail sale of liquor and malt or brewed beverages, though sales are limited exclusively to club members. Section 401 of the Liquor Control Act refers to the licenses therein authorized as "hotel liquor licenses, restaurant liquor licenses, and club liquor licenses, respectively". They are all classified as retail liquor licenses. Cf. *Commonwealth v. Stofchek,* 322 Pa. 513, 521, note 3, 185 A. 840. The Quota Act therefore is applicable to the instant case and the issue of the club liquor license here involved is within the prohibition of §2 of the Act.

Appellee contends however that though the quota of retail licenses prescribed by the 1939 Act had been *filled* merely, the order of the lower court was proper since the number of existing licenses did not *exceed* the quota

for the Borough. True, §2 of the Act, 47 PS §744-1002, provides: "where such number *exceeds* the limitation prescribed by this act, no new license, . . . shall be granted so long as said limitation is *exceeded* . . ." (Emphasis ours.) But it is a specious argument that it is only in municipalities where the quota is not only filled, but *exceeded,* that a new license may be refused. That contention would limit the number of licenses that may be granted not to the quota fixed by the Statute but "by the quota plus one". The Liquor Control Act is police legislation "for the protection of the public welfare, health, peace and morals of the people of the Commonwealth . . ." and by its terms it is to be "liberally construed for the accomplishment of this purpose": 47 PS §744-3. The Quota Act is in pari materia with the Liquor Control Act and therefore must be construed with it "as one law": Statutory Construction Act of May 28, 1937, P. L. 1019, Art. IV, §62, 46 PS §562. For this reason the Quota Act when pertinent to an application for a retail license of either class must also be liberally construed, and the liberality of construction enjoined must be in favor of the Commonwealth and not in the interest of a license applicant. The use of the language of the 1939 Act, above quoted, is understandable in the light of the existing abuses at which it was aimed. There were an excessive number of licenses in many municipalities. But construction of an Act is a matter of ascertaining the intention of the legislature and we are not obliged to accept the absurd result contended for by appellee. In the opening sentence of §2 of the Act it is specifically provided that "No licenses shall hereafter be granted, . . . in excess of one of such licenses of any class, for each one thousand inhabitants or fraction thereof . . ." This is a prohibition against the granting of any *new* license for the retail sale of liquor and malt or brewed beverages, or of malt and brewed beverages alone, in any municipality where the

quota is filled, though not exceeded. That is the clear intent of the Act under any reasonable construction. Cf. Statutory Construction Act, supra, Art. IV, §§51 (1) and (4), 52 (1) and (5), and §63, 46 PS §§551, 552, 563.

Reversed; the order of the Liquor Control Board is reinstated. Costs to be paid by appellee.