## DeAngelis Liquor License Case.

390

Argued March 12, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (Absent, WOODSIDE, J.).

*Maurice R. Metzger,* with him *Jefferson, C. Barnhart, Henry A. Frye,* and *Metzger, Wickersham & Knauss,* for protestant, appellant.

*Horace A. Segelbaum,* Assistant Attorney General, with him *Thomas D. McBride,* Attorney General, for Liquor Control Board, appellee.

*G. Thomas Miller,* with him *Bailey & Rupp,* for applicants, appellees.

OPINION BY RHODES, P. J., June 11, 1957:

This is an appeal from an order of the Court of Quarter Sessions of Dauphin County sustaining the grant of a restaurant liquor license by the Pennsylvania Liquor Control Board.

On November 4, 1955, James G. DeAngelis, Samuel J. DeAngelis, Richard J. DeAngelis and Anthony DeAngelis, trading as DeAngelis Grill (hereinafter called licensees) filed an application with the Liquor Control Board for a restaurant liquor license for premises located at the corner of Chocolate and Linden Avenues in the village of Hershey, Derry Township, Dauphin County. The licensees had operated a restaurant and had a malt beverage license at these premises for twenty-one years prior to the application. Appellant, the First Evangelical United Brethren Church of Hershey, filed a protest with the board; the church is located within one hundred feet of the premises. A hearing was held before an examiner, and, on January 24, 1956, the board approved the issuance of the liquor license, effective February 1, 1956. Appellant received due notice of the board's action. The board did not file an opinion at that time. On February 14, 1956, appellant appealed to the Court of Quarter Sessions of Dauphin County.[1] The licensees petitioned to intervene as appellees and the East Pennsylvania Conference (UB) of the Evangelical United Brethren Church petitioned to appear as amicus curiae. On April 18, 1956, the board filed a petition (upon which rule was

[1] The appeal to the court of quarter sessions was filed twenty-one days after the action of the board in granting the license. Section 464 of the Liquor Code, Act of April 12, 1951, P. L. 90, 47 PS §4—464, provides, inter alia: ". . . any church . . . aggrieved by the action of the board in granting the issuance of any such license . . . may take an appeal limited to the question of such grievance, within twenty days from the date of refusal or grant, . . ."

issued and an answer filed) requesting permission to file, nunc pro tunc, its opinion setting forth its reasons for its order of January 24, 1956,[2] granting the license. Hearing de novo on the appeal was held. After argument the court below, on October 8, 1956, entered an order permitting the licensees to intervene and the Conference to participate as amicus curiae, permitting the filing of the board's opinion nunc pro tunc, and affirming on the merits the action of the board in granting the license. Accordingly, the appeal was dismissed. Appellant then appealed to this Court.

This was the fourth application made by the licensees for restaurant liquor license. In 1946 their application was refused by the board because the quota was then filled and appellant had protested. According to the board's record the quota for Derry Township at that time was nine licenses, with twelve licenses counted against the quota, to wit, seven restaurant liquor licenses and five malt beverage licenses. Second and third applications were filed in 1949 and 1951, respectively; they were withdrawn prior to any action thereon by the board.

During the twenty-one years that the licensees held a malt beverage license at these premises it does not appear that they have been charged with any infraction of the liquor laws or of any improper conduct in connection therewith. The protestant did not attack the reputation of the licensees or of their restaurant in this proceeding. The evidence indicated that the restaurant

---

[2] "And now, January 24, 1956, it is ordered and decreed that the application for a restaurant liquor license by James G., Samuel J., Richard J. and Anthony J. DeAngelis for premises at Chocolate and Linden Avenues, Derry Township, Dauphin County, be approved and that a restaurant liquor license be issued to them upon cancellation of the retail dispenser eating place (malt beverage) license which they now hold in the said premises."

is conducted primarily for the sale of food, and that the sale of alcoholic beverages is incidental.

Appellant's statement of questions involved embodies alleged failures to observe the quota provisions of the Liquor Code.

There is no provision in the Liquor Code for the exchange of one type of license for another. *Azarewicz Liquor License Case,* 163 Pa. Superior Ct. 459, 463, 62 A. 2d 78. The present application, although it incidentally involved the surrender and cancellation of the malt beverage license, was a new application; it was subject to all the limitations prescribed by the Liquor Code with respect to such applications. *Kester's Appeal,* 140 Pa. Superior Ct. 293, 296, 14 A. 2d 184. Among the limitations is one relating to the quota of licenses for a given populated area. Appellant argues that the quota provisions have been violated by the grant of this liquor license. Section 461 of the Liquor Code of 1951, 47 PS §4—461, which incorporated the provisions of the Quota Act of June 24, 1939, P. L. 806, provides, inter alia: "No licenses shall hereafter be granted by the board for the retail sale of malt or brewed beverages or the retail sale of liquor and malt or brewed beverages in excess of one of such licenses of any class for each one thousand inhabitants or fraction thereof in any municipality, exclusive of licenses granted to hotels, as defined in this section, and clubs; . . . but where such number exceeds the limitation prescribed by this section, no new license, except for hotels as defined in this section, shall be granted so long as said limitation is exceeded." The population of Derry Township, according to the official decennial census of 1950, was 9,993, and established a quota of ten. See Liquor Code of 1951, §102, 47 PS §1—102; *Bethel Township Veterans Home Association Liquor License Case,* 180 Pa. Superior Ct. 159, 165, 119 A. 2d 613. At the time of the

present application there were in existence eight restaurant liquor licenses, two malt beverage licenses (including that of the licensees), two club liquor licenses, one club malt beverage license, and six hotel licenses, a total of nineteen. If all the licenses are chargeable against the quota, the quota is exceeded and the new license could not issue. But, under the quota provision of the Liquor Code, 47 PS §4—461, the computation of licenses chargeable against the quota shall be "exclusive of licenses granted to hotels, as defined in this section, and clubs." Excluding the hotel and club licenses, the permissible number at the time of this application was ten; the quota was filled but not exceeded. Appellant contends that two of the club licenses were issued after the enactment of the Liquor Code of 1951, and that these should be counted against the quota on the ground that the exclusion in the Liquor Code relates only to those club licenses which were in existence prior to its enactment. If that argument is accepted, there were twelve licenses outstanding and the quota was exceeded, and the present grant of a liquor license to licensees would be invalid. We do not think the Liquor Code makes such distinction. It excludes club licenses from the computation of the quota without regard to the time of their issue. In *Liberty Fireman's Social Club Liquor License Case,* 168 Pa. Superior Ct. 500, 501, 502, 79 A. 2d 112, an application was made for a license at a time when the quota was three, and when there were in existence two restaurant liquor licenses, one malt beverage license (which was to be surrendered) and a hotel liquor license. The hotel liquor license was issued after the Quota Act of 1939, and the question there arose whether it was to be charged against the quota. If not chargeable there would be an opening in the quota, as the one license was to be surrendered upon grant of the new license. We held

that the words "exclusive of licenses granted to hotels" applied to the hotel license issued after the enactment of the Quota Act of 1939, and that it was to be excluded from the computation. The principle of the *Liberty* case is applicable here, as the exclusion provision relates with equal force to clubs as well as hotels. The Liquor Code of 1951, §461, 47 PS §4—461, for quota purposes excludes "licenses granted to hotels, as defined in this section, and clubs." It is clear that both club and hotel licenses are excluded from the computation of the quota regardless of the date of their issue.[3] If the club and hotel licenses are excluded the number of liquor and malt beverage licenses chargeable against the quota at the time of this application exactly filled the quota of ten. This included, however, the malt beverage license of the licensees which they were required to surrender for cancellation before the new liquor license was issued. Consequently, when the new liquor license was issued, the number of licenses chargeable against the quota remained at ten. Appellant contends that this is improper. The quota provision of the Liquor Code, 47 PS §4—461, provides that no new license shall be issued *"in excess of one . . . for each one thousand inhabitants"*; and it further provides that, "where such number exceeds the limitation prescribed by this section, no new license . . . shall be granted *so long as said limitation is exceeded."* (Italics supplied.) The wording of the Liquor Code clearly indicates that a new license shall not be granted when the quota is exceeded or when such new license results in exceeding

---

[3] Although club licenses are not included in the computation of the quota, they are subject to the restriction against the issuance of a new license when the quota is filled. *Goodwill Fire Company of Bethlehem Liquor License Case*, 166 Pa. Superior Ct. 42, 45, 70 A. 2d 706; *Pine Grove Hose, Hook and Ladder Co. No. 1 Liquor License Case*, 167 Pa. Superior Ct. 194, 196, 197, 75 A. 2d 15.

the quota. See *Pine Grove Hose, Hook and Ladder Co. No. 1 Liquor License Case,* 167 Pa. Superior Ct. 194, 196, 197, 75 A. 2d 15. Licensees' new license was granted upon cancellation of their malt beverage license; it follows that the quota remained filled but it was not exceeded. See *Liberty Fireman's Social Club Liquor License Case,* supra, 168 Pa. Superior Ct. 500, 501, 79 A. 2d 112. If the quota remained exceeded after the cancellation of the malt beverage license, the situation would be that of an attempted exchange of licenses which is prohibited. That occurred in *Kester's Appeal,* supra, 140 Pa. Superior Ct. 293, 295, 14 A. 2d 184, but it is not the fact here. The determinative time, with respect to the grant of a license, for purposes of the Liquor Code is the grant of the license and not the mere application therefor. *Spankard's Liquor License Case,* 138 Pa. Superior Ct. 251, 257, 258, 10 A. 2d 899. On February 1, 1956, the effective date of the new license, the quota was not exceeded, and the grant of this license did not result in its being exceeded. While the Liquor Code is to be liberally construed in favor of its police purposes (*Pine Grove Hose, Hook and Ladder Co. No. 1 Liquor License Case,* supra, 167 Pa. Superior Ct. 194, 198, 75 A. 2d 15), its clear and unambiguous wording may not be ignored, and it may not be given an unreasonable interpretation. Statutory Construction Act of May 28, 1937, P. L. 1019, §§51, 52 (1), 46 PS §§551, 552 (1).

The question next presented is whether the board abused its discretion in granting this license for premises which are within one hundred feet of the appellant church. Section 432 (d) of the Liquor Code, 47 PS §4—432, provides: "The board shall, in its discretion, grant or refuse any new license . . . if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school,

or public playground, . . ." We have repeatedly said that in applying this section the administrative discretion rests with the board. Recently, in *425-429, Inc. Liquor License Case,* 179 Pa. Superior Ct. 235, 240, 116 A. 2d 79, the limitation of three hundred feet was reviewed by this Court with respect to its meaning and the extent of the board's discretion. Summarizing the matter, we said (page 240 of 179 Pa. Superior Ct., page 82 of 116 A. 2d) : "In other words, the legislature determined as a matter of policy that when one of the enumerated institutions is within the 300 feet, that alone, without any other evidence concerning reputation of the parties, the need in the neighborhood for a respectable place to dine, etc., is sufficient upon which to base a refusal to grant or transfer a license. If, however, the board is convinced that these and other factors are present and that the licensing would not be detrimental to the welfare, health, peace and morals of the neighborhood including the peace and welfare of the religious institution, then it may, in *its* discretion, allow the transfer." The board in the exercise of its discretion determined that the issuance of the liquor license to licensees would not be detrimental to the neighborhood or to the appellant church. As we have indicated, the past history of this restaurant shows its reputable character. The board noted that the conduct of licensees' business in the twenty-one years that they held the malt beverage license had no adverse effect upon the appellant church, and that there was no reason to believe that the grant of the new license would change the condition. While we may not agree that liquor should be dispensed in close proximity to a church, we may not substitute our discretion for that clearly vested by the Liquor Code in the board.

It is appellant's further position that the prior proceeding in 1946, wherein the application for a liquor

license was refused, established the "law of the case"[4] with respect to the proximity of the premises to the church, and that the board could not again exercise discretion in the matter. "The question of conclusiveness and finality of any administrative determination involves many factors, including the terms of the statute, the substance and effect of the order." *West Penn Power Company v. Pennsylvania Public Utility Commission*, 174 Pa. Superior Ct. 123, 128, 100 A. 2d 110, 113. In *425-429, Inc. Liquor License Case*, supra, 179 Pa. Superior Ct. 235, 242, 116 A. 2d 79, 83, where a similar contention with respect to the Liquor Code was presented, we said: "We are of the opinion, however, that the doctrine of res judicata is not applicable to this situation. The Liquor Code makes no restriction regarding the number of times a person may apply for a transfer, despite the fact that it fully and in great detail encompasses the field of liquor licensing and regulation. Had the legislature intended that there be a limit on the applications, so basic a matter, it would have so provided."[5] But, if the board merely reverses its conclusion upon the identical issues and facts without stating any valid reason therefor, its action may amount to an abuse of discretion.[6] *Hotch-*

---

[4] A doctrine similar to res judicata. See *Clarendon V. F. W. Home Association Liquor License Case*, 167 Pa. Superior Ct. 44, 48, 75 A. 2d 171.

[5] See, also, *Whitford Liquor License Case*, 166 Pa. Superior Ct. 48, 52, 70 A. 2d 708, 710: "Res judicata does not generally apply to the orders of administrative agencies, *Perkasie Sewer Co. v. Pa. P. U. C.*, 142 Pa. Superior Ct. 262, 16 A. 2d 158, although administrative decisions judicially reviewed may in some instances possess the conclusive qualities of judgments. *Beaver Valley Water Co. v. Pa. P. U. C.*, 140 Pa. Superior Ct. 297, 14 A. 2d 205."

[6] See *West Penn Power Company v. Pennsylvania Public Utility Commission*, 174 Pa. Superior Ct. 123, 128, 100 A. 2d 110, 113:

Kiss *Liquor License Case,* 169 Pa. Superior Ct. 506, 508, 512, 83 A. 2d 398. An examination of the proceeding on licensees' application of 1946 indicates that the issues and the facts were essentially different. At that time the quota for Derry Township was nine licenses and there were twelve chargeable against the quota. In that proceeding the licensees attempted to exchange their malt beverage license for the liquor license notwithstanding the quota limitation, which could not be done. The board refused to grant the license because the quota was filled, and because the premises for which the application was filed were within three hundred feet of a church. On appeal the lower court sustained the board's refusal on the basis of the proximity to the church. The quota restriction in the prior case was an absolute bar to the grant of a license, and as long as the quota was exceeded the board had no power to exercise any discretion with regard to other matters such as the limitation of three hundred feet. *Whitford Liquor License Case,* 166 Pa. Superior Ct. 48, 50, 70 A. 2d 708; *Bethel Township Veterans Home Association Liquor License Case,* supra, 180 Pa. Superior Ct. 159, 165, 119 A. 2d 613. The facts in the present case show that the quota is no longer exceeded; the proximity of the premises to the church, which was not legally involved in the prior proceeding, then became an issue; and the board, on the basis of the facts existing at the time of this application, found that there would be no adverse effect upon the appellant church.

---

"While the doctrine of res judicata does not apply, in any strict or technical sense, to decisions of administrative agencies, there must be a point at which an administrative ruling . . . becomes fixed and definite though subject to change or modification in the future on proper proceedings."

It thereupon exercised its discretion in favor of granting the license.

The *Clarendon V. F. W. Home Association Liquor License Case,* 167 Pa. Superior Ct. 44, 75 A. 2d 171, is readily distinguished. In that case, after the term time and after the appeal period had run, the lower court attempted to reopen and reverse its order granting a club liquor license. We held this to be error although the original judgment was based upon an erroneous interpretation of the law. We concluded, inter alia, that the original unappealed decision had become the "law of the case." There is no similarity between that case and what is presently before us. The present application is a separate proceeding in which an issue is whether the quota is only filled or has been exceeded. It was properly determined on the record that the quota had not been exceeded, and that the appellant church would not be adversely affected. The Liquor Code does not restrict the number of applications or make the decision on one conclusive upon another. *425-429, Inc. Liquor License Case,* supra, 179 Pa. Superior Ct. 235, 242, 116 A. 2d 79. The board may reach a different conclusion on the subsequent application if there is a valid reason advanced for doing so. *Hotchkiss Liquor License Case,* supra, 169 Pa. Superior Ct. 506, 508, 83 A. 2d 398. At the time of the present proceeding the quota for and the number of licenses in Derry Township had materially changed, and for the first time consideration could be given to the propriety of the grant of the liquor license for premises within three hundred feet of the church.

Appellant has also alleged error in the allowance of the board's petition for leave to file its opinion nunc pro tunc. Under the wording of the Liquor Code, the board is not required to file any opinion when it grants a license; it is only required to do so when it refuses to

grant a license.[7]  See *Hotchkiss Liquor License Case,* supra, 169 Pa. Superior Ct. 506, 509, 83 A. 2d 398, 399, where we noted this state of the law and commented: "In our opinion, however, it would have been the better part of discretion for the board to have filed 'at least a brief statement' of the reason for its ruling or order granting the license over the protest, especially since it had previously sustained the protest and denied the license." It would seem obvious that, if the board is not required to file an opinion when it grants a license, it is not required to file one within any prescribed time. While the opinion of the board was delayed, it was filed within sufficient time to inform the parties and the court below of its findings and reasons prior to the hearing on the appeal. There is no indication that anyone was prejudiced by the delay.

The order is affirmed.

WOODSIDE, J., took no part in the consideration or decision of this case.

---

[7] "The board shall thereupon grant or refuse the license, renewal or transfer thereof. . . . If the board shall refuse such license, renewal or transfer following such hearing, notice in writing of such refusal shall be mailed to the applicant at the address given in his application. In all such cases, the board shall file of record at least a brief statement in the form of an opinion of the reasons for the ruling or order and furnish a copy thereof to the applicant." The Liquor Code of 1951, §464, 47 PS §4—464.