## Moriarty Liquor License Case.

Argued June 8, 1959. Before RHODES, P.J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Francis J. Mottey,* Special Assistant Attorney General, with him *George G. Lindsay* and *Horace A. Segelbaum,* Assistant Attorneys General, and *Anne X. Alpern,* Attorney General, for appellant.

*Edward T. Kelley,* for appellee.

OPINION BY RHODES, P. J., July 3, 1959:

This is an appeal by the Pennsylvania Liquor Control Board from an order of the Court of Quarter Sessions of Clearfield County which overruled the action of the board in refusing to issue a restaurant liquor license to Francis M. Moriarty and Frances M. Moriarty. The court below determined that the Moriarty malt beverage license, previously held, could be exchanged or transferred for a restaurant liquor license notwithstanding the quota provisions of the Liquor Code. The action of the court below will be reversed.

The applicants, trading as Rip's Bar, have held a malt beverage license in Morris Township, Clearfield County, since March, 1952. In November, 1957, they applied for a restaurant liquor license in exchange for the malt beverage license. The board refused the application. According to the 1950 decennial census, Morris Township has a population of 3,228, giving it a quota of four licenses. There are five licenses in effect counted against the quota, three of which are restaurant liquor licenses and two malt beverage eating place licenses. In addition, and not counted in the quota, there are a club liquor license and a club malt beverage license.

Under the circumstances the board properly refused the Moriarty application. The Act of April 12, 1951, P. L. 90, §461, 47 PS §4-461, provides: "(a) No licenses shall hereafter be granted by the board for the retail sale of malt or brewed beverages or the retail sale of liquor and malt or brewed beverages in excess of one of such licenses of any class for each one thousand inhabitants or fraction thereof in any municipality, exclusive of licenses granted to hotels, as defined in this section, and clubs; . . ." The application for a restaurant liquor license was an application for a new license within the meaning of this provision; it was not simply a replacement for the malt beverage license. As we said in *DeAngelis Liquor License Case,* 183 Pa. Superior Ct. 388, 393, 133 A. 2d 266, 268: "There is no provision in the Liquor Code for the exchange of one type of license for another. Azarewicz Liquor License Case, 163 Pa. Superior Ct. 459, 463, 62 A. 2d 78. The present application, although it incidentally involved the surrender and cancellation of the malt beverage license, was a new application; it was subject to all the limitations prescribed by the Liquor Code with respect to such applications. Kester's Appeal, 140 Pa. Superior

Ct. 293, 296, 14 A. 2d 184. Among the limitations is one relating to the quota of licenses for a given populated area."

A restaurant liquor license and a malt beverage license are separate, different, and distinct privileges. The grant of each license must be based upon its own application and its own satisfaction of the provisions and limitations of the Liquor Code. *Kester's Appeal*, 140 Pa. Superior Ct. 293, 296, 14 A. 2d 184; *Talley Liquor License Case*, 184 Pa. Superior Ct. 458, 460, 136 A. 2d 143.

The previous cases applying the quota provision are declarative of the clear legislative intent and are controlling upon this appeal.

The order of the court below is reversed.